**John E. Phillips**
**Attorney-at-Law, P.C.**
975 N. Silverbell Rd., #87968
Tucson, AZ 85754-4120
Telephone: (928) 717-0977
John E. Phillips, State Bar Number 015243
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Linda Griffith,<br>Plaintiff,<br>vs.<br>The Lincoln National Life Insurance Company; Lincoln Financial Group Trust Company, Inc.; White Mountain Regional Medical Center Foundation; Group Long Term Disability Insurance for Employees of White Mountain Regional Medical Center Plan,<br>Defendants. | Case No: 3:20-cv-08079-DLR<br><br>**First Amended Complaint** |

Now comes Linda Griffith (hereinafter referred to as the "Plaintiff"), by and through her attorney, John E. Phillips, and complaining against the Defendants, she states:

**Jurisdiction and Venue**

1. Plaintiff is a resident of Yavapai County, Arizona.

2. Defendant The Lincoln National Life Insurance Company ("Lincoln") is an insurance company incorporated in Indiana, with its principal place of business in Fort Wayne, Indiana. Lincoln is authorized to do business in Yavapai County, Arizona.

3. Defendant White Mountain Communities Hospital, Inc. (hereinafter referred to as the "Company"), sponsored a group long term disability insurance policy from White Mountain Communities Hospital, Inc., administered and purchased a group long term disability insurance policy which was fully insured by Lincoln Financial Group Trust Company, Inc. The specific Lincoln group disability policy is known as Policy No.:

000010201004000000 (hereinafter referred to as the “Policy”). The Company’s purpose in sponsoring, administering and purchasing the Policy was to provide disability insurance for its employees. Upon information and belief, the Policy may have been included in and was part of an employee benefit plan, which may have been named “Group Long Term Disability Insurance for Employees of White Mountain Regional Medical Center” (hereinafter referred to as the “Plan”) and was created to provide the Company’s employees with welfare benefits. At all times relevant hereto, the Plan constituted an “employee welfare benefit plan” as defined by 29 U.S.C. § 1001 et seq.

4. This Court has jurisdiction over the Plan pursuant to the Employee Retirement Income Security Act (“ERISA”) 29 U.S.C. § 1132, and because the Plan and Lincoln have caused events to occur in Arizona out of which Plaintiff’s claims arise.

5. This Court has jurisdiction over the subject matter of this action under ERISA, 29 U.S.C. §§ 1132(a), (e), 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 2202 (declaratory judgments).

6. Defendants reside and are found within this District within the meaning of the jurisdiction and venue provisions of ERISA.

7. Lincoln is the claims administrator of the Policy; however, pursuant to the relevant ERISA regulation, the Company and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Lincoln. The Company is responsible for Lincoln’s actions and decisions.

8. Lincoln operated under a conflict of interest in evaluating Plaintiff’s long term disability claim due to the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of benefits. Lincoln saved money when it denied Plaintiff’s claim.

**Nature of the Complaint**

9. Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the Policy and a “participant” as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other employee benefits she may be

entitled to from the Company, the Plan and/or any other Company Plan as a result of being found disabled in this matter.

10. Under the Policy, an employee is "disabled" under two distinct sets of criteria. For the first 24 months of benefits, termed in the Policy as the "Own Occupation Period," the employee must be unable to perform the "main duties" of her Own Occupation (the occupation in which they were employed in by the Employer prior to Disability which was her main source of earned income). The Policy defines "main duties" as job tasks that are normally required to perform the insured employee's own occupation which could not reasonably be modified or omitted, as set forth in the United States Department of Labor Dictionary of Occupational Titles. After the Own Occupation Period, the Employee must be unable to perform the Main Duties of any occupation which his or her training, education or experience will reasonably allow.

11. After working for the Company as a loyal employee, Plaintiff became disabled due to serious medical conditions and was unable to work in her Own Occupation, that being as a Material Manager (DOT[1]# 183.167-030). Plaintiff has remained disabled as that term is defined in the relevant Policy continuously since then and has not been able to return to work in any occupation as a result of her serious medical conditions.

12. Plaintiff was diagnosed with fibromyalgia, degeneration of the spine, peripheral neuropathy, osteoarthritis, and osteoporosis.

13. Following her disability, Plaintiff filed a claim for short term disability benefits which were approved, and those benefits have been paid and exhausted. Plaintiff then filed for long term disability benefits under the relevant Policy which was administered by Lincoln, meaning that Lincoln made the decision with regard to whether Plaintiff was able to perform the Main Duties of her Own Occupation.

14. Lincoln found Plaintiff disabled as of April 29, 2016 paying long-term disability benefits as of this date.

---

[1] Dictionary of Occupational Titles

15. In accordance with the provisions of the Plan, Plaintiff filed for Social Security Disability Benefits and was immediately found disabled by the Social Security Administration. The Social Security Administration has determined that due to Plaintiff's severe disability, Plaintiff cannot engage in any substantial gainful employment of any kind. Further, both the Social Security Administration, and under the Policy, the United States Department of Labor's Dictionary of Occupational Titles as the determinative vocational evidentiary source.

16. On September 26, 2017 Lincoln notified Plaintiff that her disability benefits would cease as of April 29, 2018 due to a change in criteria under the Policy. Lincoln's stated basis for termination was that, under the Policy, as of April 29, 2018 Plaintiff must not only be incapable of performing one or more of the Main Duties of her Own Occupation; Plaintiff must be incapable of performing one or more of the Main Duties of Any Occupation which her training, education, or experience will reasonably allow.

17. Lincoln asserted Plaintiff can perform the Main Duties of three occupations: Customer Service Representative Supervisor (DOT# 239.137-014) with a mean wage of $3,385.00/month, Consultant (DOT# 189.117-050) with a mean wage of $4,092.50/month, and Contract Administrator (DOT# 162.117-014) with a mean wage of $3,968.00/month. This third occupation is Plaintiff's Own Occupation as Lincoln previously recognized, and this assertion is directly at odds with Lincoln's prior award of long-term disability benefits during the Own Occupation period.

18. Lincoln failed to identify the Main Duties of any of the occupations specified in Paragraph 17, despite the Policy requiring Plaintiff be able to perform the Main Duties of Any Occupation.

19. Plaintiff appealed Lincoln's initial termination of her long-term disability benefits on March 21, 2018 and Lincoln recognized Plaintiff's appeal on March 28, 2018.

20. Lincoln is bound under the Plan and ERISA to resolve Plaintiff's claim for disability benefits within 45 days of receiving the claim, but this time period can be extended twice for up to 30 days if more time is required due to circumstances beyond its control.

21. On April 18, 2018, May 21, 2018, May 31, 2018, July 24, 2018, and August 29, 2018 Lincoln notified Plaintiff a "45-day extension" was required without any stated reason beyond providing Plaintiff "every opportunity to submit a complete appeal," and indicated Lincoln had the right to at least two 45-day extensions under ERISA, and only then "once all documentation has been provided."

22. Under ERISA, Lincoln was required to resolve Plaintiff's initial appeal within 45 days of receipt of the appeal, that being approximately May 13, 2018. Although Lincoln had a right to only two 30-day extensions, in using this right, Lincoln must provide an explanation, specifically what unresolved issues that prevent a decision from being made timely, and even if Lincoln had provided Plaintiff notice of what issues were unresolved, that still would only extend Lincoln's statutory deadline to July 11, 2018.

23. On November 5, 2018, 222 days after Lincoln received Plaintiff's appeal, Lincoln largely affirmed their initial decision to preemptively terminate Plaintiff's benefits under the Any Occupation standard.

24. Lincoln did not obtain an Independent Medical Review at any point during the pendency of Plaintiff's appeal.

25. Lincoln concluded the relevant Policy standard that Plaintiff was required to meet was that she must be unable to perform ***each*** of the Main Duties of "any gainful occupation," as opposed to the Main Duties of ***any*** occupation as required under the Policy.

26. Lincoln acknowledged only one of the three occupations originally found performable was, in their opinion, accurate, that being the occupation of Contract Administrator (DOT# 162.117-014), Plaintiff's Own Occupation.

27. The basis for the removal of the other two occupations originally found performable as Any Occupations under the Policy appears to be that Lincoln's Vocational Rehabilitation Consultant indicated only work as a Contract Administrator could reach the 70 percent pre-disability earnings level required under Lincoln's internal rule, and only then, a single employer indicated wages would be of a sufficient level; that

employer indicated in fact the employee would also be expected to perform the occupation of Production Lead in addition to work of a Contract Administrator.

28. Plaintiff appealed Lincoln's decision, and Lincoln recognized Plaintiff's appeal on April 29, 2019.

29. On May 22, 2019, Lincoln notified Plaintiff that an extension of 45 days was required to perform a "medical review."

30. On May 30, 2019, Lincoln notified Plaintiff that Plaintiff had only 21 days to submit any additional medical evidence, expiring on June 20, 2019, and that this delay was to provide Plaintiff "every opportunity to review our assessment and provide a response."

31. Attached to the May 30, 2019 notice, Lincoln provided the undated, unsigned report of a nurse employed by Lincoln whose full name was not provided.

32. On May 30, 2019, an employee of Lincoln contacted Plaintiff's counsel's office and stated while the notice indicated no determination had been made, Lincoln intended to deny Plaintiff's claim.

33. Prior to rendering its November 5, 2018 denial, Lincoln never shared with Plaintiff the report authored by Lincoln's Vocational Rehabilitation Consultant and did not engage Plaintiff or any of her treating providers in a dialogue so Plaintiff could either respond to the reports and/or perfect her claim. Lincoln's failure to provide Plaintiff with the opportunity to cure any alleged deficiencies in her claim and/or respond to the reviewing physician's and vocational reports precluded a full and fair review pursuant to ERISA and is a violation of Ninth Circuit case law.

34. In evaluating Plaintiff's claim on appeal, Lincoln had an obligation pursuant to ERISA to administer Plaintiff's claim, "solely in her best interests and other participants" which it failed to do[2].

---

[2] ERISA sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" with respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by

35. Lincoln failed to adequately investigate Plaintiff's claim and failed to engage Plaintiff in any dialogue whatsoever during the appeal of her claim with regard to what evidence was necessary so Plaintiff could perfect her appeal and claim. Lincoln's failure to investigate the claim and to engage in this dialogue or to obtain the evidence it believed was important to perfect Plaintiff's claim is a violation of ERISA and Ninth Circuit case law and a reason she did not receive a full and fair review.

36. Plaintiff believes Lincoln provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, for the following reasons which include, but are not limited to:

- Failing to adequately evaluate and consider the approval of Plaintiff's SSA claim;
- Failing to credit Plaintiff's reliable evidence;
- Failing to adequately investigate Plaintiff's claim;
- Providing one sided reviews of Plaintiff's claim that failed to consider all evidence submitted by Plaintiff and/or that de-emphasized medical evidence which supported Plaintiff's claim;
- Disregarding Plaintiff's self-reported symptoms;
- Failing to consider all the diagnoses and/or limitations set forth in the medical evidence as well as the impact the combination of those diagnoses and impairments would have on her ability to work;
- Failing to engage Plaintiff in a dialogue so Plaintiff could submit the necessary evidence to perfect her claim;
- Failing to consider the impact the side effects from Plaintiff's medications would have on her ability to engage in any occupation; and,

---

insisting that administrators "provide a 'full and fair review' of claim denials," *Firestone Tire & Rubber Co. v. Burch*, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

- Failing to consider Plaintiff's brief submitted along with Plaintiff's second appeal.
- Failing to identify the experts upon which Lincoln considered in denying Plaintiff's first and second appeal.
- Failing to timely resolve Plaintiff's claim.

37. Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of Lincoln and any individual who reviewed her claims and the Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of any conflict of interest and/or ERISA procedural violation which may have impacted or influenced Lincoln's decisions to deny her claims.

38. Given Lincoln's history of biased and parsimonious claims handling, *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006), circuit law allows Plaintiff to engage in discovery so she can meet her burden of proof to produce evidence regarding Lincoln's conflicts of interest. *Demer v. IBM LTD Plan*, 835 F.3d 893, 902 (9th Cir. 2016) ("We further take note that it is Mr. Demer's burden, as the party claiming a conflict, to produce evidence of a financial conflict sufficient to warrant a degree of skepticism.")

39. *Demer* allows Plaintiff to engage in discovery so she can provide the extrinsic evidence the Court needs to properly weigh and consider the nature, extent, effect and influence that ***any*** conflict of interest, and/or any ERISA procedural violation had on Lincoln's decision to deny Plaintiff's claim.

40. Discovery is necessary as structural bias inherently cannot be established within a single administrative record, formed during the course of a single insurance claim, yet Plaintiff is entitled to engage to discovery in accordance with the *Demer* and *Abatie* Courts' holdings. Further, discovery can be highly relevant to informing the Court as to the weight of the evidence. For example, The District Court for the District of Nevada allowed in *Hertz v. Hartford Life & Accident Ins. Co.*, 991 F. Supp 2d 1121, 1136 (D. Nev. 2014) for Plaintiff to engage in discovery which specifically identified a conflict of interest. As held by the *Hertz* Court:

> "Accordingly, MLS [i.e. third-party vendor] found that approximately 95% of all claimants could perform some type of work. During that same time frame, Dr. Rim reviewed fourteen (14) claims for Hartford…Significantly, of those fourteen (14) claims reviewed, Dr. Rim did not find that a single claimant was completely unable to perform any type of work.
>
> Accordingly, Dr. Rim found that 100% of all claimants could perform some type of work. The Court finds these statistics strongly suggest that both MLS and Dr. Rim harbored a significant bias towards finding a claimant capable of performing some type of work. *See Montour*, 588 F.3d at 634[3] (noting relevance of statistics regarding Hartford's rate of claims denials or how frequently it contracts with the file reviewers it employed in that case to the issue of bias)."

41. The standard of review for this Court to apply is *de novo* as the Policy does not contain discretionary language.

42. Pursuant to 29 U.S.C. § 1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

43. Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. § 20-462, or at such other rate as is equitable and appropriate to compensate her for losses she incurred as a result of Defendants' nonpayment of benefits.

44. Plaintiff is entitled to the immediate re-initiation of the benefit payments of $2,676.96 until Plaintiff ~~age of 65~~ is 66 years and 2 months of age, and the total amount of ~~$69,600.96~~ $96,370.56 in current benefits.

45. As a direct result of Lincoln's decision to deny Plaintiff's disability claims, she has been injured and suffered damages in the form of lost long term disability benefits, in addition to other potential employee benefits she may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled. Plaintiff believes other potential employee benefits may include but not be limited to, health and other insurance related coverage or benefits, retirement benefits or a pension, life insurance coverage and/or the waiver of the premium on a life insurance policy providing coverage for her and her family/dependents.

---

[3] *Montour v. Hartford Life & Accident*, 588 F.3d 623 (9th Cir. 2009)

**COUNT 2 – Bad Faith**

46. Plaintiff incorporates by reference the facts alleged in paragraphs 1-45.

47. An Insurer acts in bad faith where it "intentionally denies, fails to process, or pay a claim without a reasonable basis." *Zilisch v. State Farm Mutual Auto Ins. Co.*, 196 Ariz. 234, 237, 995 P.2d 276, 279 (2000) (*en banc*).

48. The legal test is whether "reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Id.*

49. On April 16, 2019, Plaintiff through counsel informed Defendants that identification of the Main Duties of Any Occupation was required in order to support the termination of Plaintiff's disability benefits under the Policy.

50. On June 4, 2019, Plaintiff received a notice from Defendants with an undated, unsigned report of a "health care consultant" and Defendant asserted Plaintiff must provide any response within 21 days.

51. Defendants' consultant's report indicated they believed Plaintiff "is not completed restricted from any specific activity" but "agree she should not work at heights or climbing ladders due to gait and balance difficulties."

52. Plaintiff responded to Defendants' notice, on June 18, 2019, informing Defendants that: the identity of Defendants' "consultant" was not provided in violation of ERISA, the "consultant" appeared to be a registered nurse, not a physician as required under the Policy, and Defendants repeated failures in identifying their experts denies Plaintiff's right to a full-and-fair review.

53. Plaintiff also directed Defendants to maintain all evidence in the event this matter proceeds to litigation and discovery would be necessary.

54. Defendants notified Plaintiff, through counsel, that Defendants intended to stand on their June 4, 2019 decision, terminating Plaintiff's disability benefits under the Any Occupation standard set forth in the Policy, and that this decision will be received in writing.

55. To date, no decision has been received in writing, and there has been no communication with Plaintiff or Plaintiff's counsel by Defendants since the June 4, 2019 letter.

56. Defendants' failure to recognize actual identification of their experts, as well as identification of the Main Duties of Any Occupation Plaintiff is capable of performing as found by Defendants; either of these actions are unreasonable and Defendants either knew or was conscious of the fact that its conduct was unreasonable as established by Plaintiff's direct notification to Defendants that Defendants were failing to comply with the provisions of the Policy and ERISA.

57. Disability is established under the Policy during the "Any Occupation" period if Plaintiff is incapable of performing all the Main Duties of Any Occupation which Plaintiff's training, education, or experience will reasonably allow. This inherently requires identification of Plaintiff's training, education, or experience; identification of an occupation; identification of the Main Duties of this occupation; and a reasonable explanation as to how Plaintiff's training, education, or experience will allow her to perform this occupation.

58. Defendants' refusal to comply with the terms of the Policy and ERISA is bad faith.

59. Plaintiff is entitled to equitable relief, injunction, preventing Defendant's termination of Plaintiff's benefits prior to providing actual vocational and medical evidence comporting to the Policy provisions.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order requiring Defendants to pay Plaintiff her long term disability benefits, and any other employee benefits as referenced herein that she may be entitled to as a result of being found disabled pursuant to the Policy, from the date she was first denied these benefits through the date of judgment and prejudgment interest (pursuant to A.R.S. § 44-1201(b)) thereon which amounts to as of the filing month of this complaint $89,232.00;

B. For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such time as she meets the conditions for termination of benefits as set forth in the Policy and if termination is appropriate at a future date, directing Defendant identify their medical or vocational professionals at the Main Duties of Any Occupation which Defendants believe Plaintiff is capable of performing;

C. For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D. For such other and further relief as the Court deems just and proper.

**DATED** this ~~8th day of April~~ 27th day of May, 2020.

s/John E. Phillips
JOHN E. PHILLIPS,
Attorney at Law, P.C.
Attorney for Plaintiff